# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

CHUANHUA YANG,

      Plaintiff,

v.

ONE LILY PAD, LLC AND WILLIAM MARTINES,

      Defendants,

Case Number 23-cv-

Honorable

---

BODMAN PLC
Michelle Thurber Czapski (P47267)
Nathan D. Dupes (P75454)
201 W. Big Beaver Road, Suite 500
Troy, Michigan 48084
(248) 743-6000
mczapski@bodmanlaw.com
ndupes@bodmanlaw.com
*Attorneys for Plaintiff*

---

## VERIFIED COMPLAINT FOR BREACH OF CONTRACT, INJUNCTIVE AND OTHER RELIEF

Plaintiff Chuanhua Yang ("Ms. Yang" or "Plaintiff"), through her attorneys,

Bodman PLC, complains against Defendants One Lily Pad, LLC ("One Lily Pad")

and William Martines ("Martines," and together with One Lily Pad, "Defendants") as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Ms. Yang is an individual who is a citizen of China and domiciled in, but not a permanent resident of, Ohio. Ms. Yang is a 25% Member and holds one of three management seats of OLPMN 1, LLC (the "Company")

2.      Defendant Martines is an individual who, on information and belief, is domiciled in, and a citizen of, Rochester, Michigan. He is also the President of the Company.

3.      One Lily Pad, LLC is a Michigan limited liability company, with its principal place of business in Rochester, Michigan. One Lily Pad's sole member is Jan64 Group, LLC. On information and belief, Jan64 Group, LLC is a Michigan limited liability company whose sole member is William Martines. For purposes of diversity jurisdiction, One Lily Pad is a citizen of Michigan. Defendant One Lily Pad is a 75% Member and holds two of three management seats of the Company.

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332. There is complete diversity between the parties because the dispute is between a Plaintiff that is a citizen of a foreign state and Defendants that are

citizens of Michigan. The amount in controversy exceeds $75,000, exclusive of interest, costs and attorneys' fees, and Plaintiff seeks equitable relief.

5.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are residents of the state of Michigan and reside in this district and because some of Defendants' breaches of contract occurred in this district.

6.     Moreover, Defendants agreed that venue is proper in the state and federal courts of Michigan in the Amended and Restated Operating Agreement of OLPMN 1, LLC (the "Operating Agreement"). Copies of the Operating Agreement, signed by Ms. Yang and Mr. Martines are attached hereto as Exhibit 1 and Exhibit 2, respectively.

**FACTUAL ALLEGATIONS**

**A. Summary of the Dispute.**

7.     Ms. Chuanhua Yang and William Martines formed the Company in 2014 in order to take advantage of the EB-5 Immigrant Investor Pilot Program, which was created in 1990 to stimulate the U.S. economy through job creation and capital investment by foreign investors. The program provides a foreign investor with a streamlined path to permanent residency provided certain requirements are fulfilled. The parties planned to fulfill the EB-5 requirements by owning and operating two Marco's Pizza restaurants in Florida.

8.    However, rather than work as true partners, Defendants have abused their control of the Company and violated the contractual and fiduciary obligations that they owe Ms. Yang, the minority member. Indeed, Ms. Yang has recently learned that, rather than providing her the preferred returns on investment to which she is entitled under the Operating Agreement, Mr. Martines has used the Company as his personal piggybank, leaving her no choice but to bring this suit and prevent further misconduct.

**B. The Formation of the Company.**

9.    Ms. Chuanhua Yang and One Lily Pad are the two Members of the Company.

10.    In 2014, Ms. Yang made an initial capital contribution (the "Initial Capital Contribution") of one million and fifty thousand dollars ($1,050,000.00) in the Company in exchange for a 25% membership interest. Ex. 1, § 5.03 & Exhibit A. Ms. Yang is referred to in the Operating Agreement as the "Investor Member."

11.    One Lily Pad did not make an initial capital contribution in the Company but holds the remaining 75% membership interest. *Id.*, § 5.03 & Exhibit A.

###### *i.    Managers' Powers and Duties Under the Operating Agreement*

12.    Pursuant to the Operating Agreement, the property, affairs, and business of the Company is managed by three Managers, who may exercise all of the powers of the Company. Ex. 1, § 3.01

13.    Matters are decided by a majority vote of the Managers. However, no single Manager has the authority or power to act for or on behalf of the company or bind the company, or incur any expenditures on behalf of the company. *Id.*, § 3.07.

14.    Managers are elected annually at the annual meeting of the Members. Ex. 1, §§ 3.02; 3.11. Ms. Yang has the right to elect one manager and Defendant One Lily Pad has the right to elect two managers. *Id.*, § 3.02.

15.    Martines and Ms. Yang are the only two managers of the Company. Because Martines was appointed by One Lily Pad, which holds two of the three management seats in the Company, he effectively has complete control over the Company.

16.    Pursuant to the Operating Agreement, Managers have the power to:

> (a) establish policy for the Company; (b) purchase, lease, or otherwise acquire any real or personal property; (c) sell, convey mortgage, grant a security interest in, pledge, lease, exchange or otherwise disclose of or encumber any real or personal property; (d) open one or more depository accounts and make deposits into and checks and withdrawals against such accounts; (e)borrow money and incur liabilities and

other obligations; (f) enter into any and all agreements and execute any and all contracts, documents and instruments; (g) engage employees and agents, define their respective duties and establish their compensation or remuneration; (h) obtain insurance covering the business affairs of the property of the Company and on the lives and well being of its Members, employees and agents; (i) commence, prosecute or defend any proceedings in the Company's name; (j) participate with others in partnerships, joint ventures and other associations and strategic alliances; and (k) sign the necessary documents to pursue a patent, copyright, trademark and servicemark applications.

*Id.*, §3.01

17.    The Managers also have the power to elect or appoint one or more officers and authorize the officers' titles, authority and duties. *Id.*, § 3.15.

18.    Managers are required to discharge their duties as Manager in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner they reasonably believe to be in the best interests of the Company. Ex. 1, § 3.13.

19.    Managers are required to account to the Company and hold as trustee for it any profit or benefit derived by the Manager from any transaction connected with the conduct or winding up of the Company or from any personal use by the Manager of its property. *Id.*, § 3.14.

6

20.     Managers are not personally liable to the Company or its Members for monetary liability for breach of the duties established in Section 404 of the Michigan Limited Liability Company Act ("MLLCA"), with a few exceptions: (a) The receipt of a financial benefit for which the Manager is not entitled; (b) Liability under Section 308 of the MLLCA[1]; (c) A knowing violation of the law; (d) An act or omission occurring before the effective date of the Operating Agreement. *Id.*, § 4.01.

### ii.     *Members' Powers and Duties Under the Operating Agreement*

---

[1] Section 308 of the MLLCA provides in relevant part:

> (a) A member or manager that votes for or assents to a distribution in violation of an operating agreement or section 307 is personally liable, jointly and severally, to the limited liability company for the amount of the distribution that exceeds what could have been distributed without violating the operating agreement or section 307 if it is established that the member or manager did not comply with section 404.

> (b) A member that accepts or receives a distribution with knowledge of facts indicating it is in violation of an operating agreement or section 307 is liable to the limited liability company for the amount the member accepts or receives that exceeds the member's share of the amount that could have been distributed without violating section 307 or the operating agreement.

21.     Although Members of the Company do not have the right to vote on all Company matters, a majority vote of the Members (or higher) is required in several situations.

22.     One situation in which a majority vote of Members is required is the "sale, exchange, lease or other transfer of a material amount of the assets of the Company outside of the ordinary course of business." Ex. 1, § 2.06. This provision also requires that the Investor Member approve any "sale, exchange, lease or other transfer of a material amount of the assets of the Company outside of the ordinary course of business in which the Investor Member receives an amount (after distributions from such sale) less than the sum of the balance of the Investor Member's (i) Adjusted Contribution Account and (ii) accrued, but unpaid, Preferred Return Amount." *Id.*

23.     Approval by all of the Members is also required for "any material change in the character of the business and affairs of the Company." *Id.*

24.     Several provisions of the Operating Agreement provide for distributions to Members.

25.     The Operating Agreement provides for certain guaranteed payments to One Lily Pad for services it renders to the Company. *Id.*, § 5.15(b).

8

26.     Pursuant to Section 5.13(b), the Company shall distribute Excess Cash in the following order of priority:

(i)     First, to the Investor Member, to the extent of his or her accrued, but unpaid, Preferred Return Amount[2];

(ii)    Then, to the Investor Member, to the extent of the balance of his or her Adjusted Contribution Account[3];

---

[2] Preferred Return Amount" is defined as:

[W]ith respect to the Investor Member, and for each Fiscal Year, an amount equal to the product of the Preferred Return Rate and the weighted average balance in such Member's Adjusted Contribution Account during such Fiscal Year (determined without regard to the Preferred Return Amount for such Fiscal Year). For purposes hereof, the weighted average balance of the Adjusted Contribution Account during any Fiscal Year means the amount obtained by adding the balances in the Adjusted Contribution Account on each of the days of such Fiscal Year (determined without regard to the Preferred Return Account for such Fiscal Year) and then dividing the sum by the number of days in such Fiscal Year.

Ex. 1, Article X, § 10.01(cc).

[3] Adjusted Contribution Account is defined as:

[W]ith respect to the Investor Member, an account to which there shall be credited: (i) on the date of contribution, the amount of such Investor Member's Capital Contribution, except that the Investor Member's $50,000 Tranche 1 Capital Contribution to fund certain Company expenses and Covered Legal Fees, as described in Section 5.03(a)(i), shall not be credited to the Investor Member's Adjusted Contribution Account; and (ii) on the last day of each Fiscal Year of the Company, the Preferred Return Amount for sch Fiscal Year, and to which there shall be debited, on the date of distribution, the amount of

> (iii)   Then, to the Members pro-rata, in proportion to their respective Percentage Interests;
>
> Provided however, that no distributions shall be made with respect to a Profits Interest until the aggregate amount distributed to all other Membership Interests (including previously granted Profits Interests) under this Section 5.13(b) and Section 8.04(d) equals the Distribution Threshold with respect to that Profits Interest.

27.   In short, the Operating Agreement provided that any Excess Cash first would be distributed to Ms. Yang.

28.   The Company created two subsidiaries, OLP1, LLC and OLP2, LLC, to run Marco's Pizza stores in Florida. These stores are referred to as the 8474 OLP FL2 Windermere Store and the 8456 OLP1 LLC Apopka Store (together, the "Marco's Pizza Stores"). The Marco's Pizza Stores satisfy the requirements of the EB-5 Program, discussed in further detail below.

## B. Plaintiff's Investment Through the EB-5 Program.

29.   Under the EB-5 Program the United States Citizenship and Immigration Services (USCIS) designates a certain number of EB-5 immigrant visas each year for qualified individuals seeking Lawful Permanent Resident status on the

---

any distributions to such Investor Member as described in Sections 5.13(b)(i), 5.13(b)(ii), 8.04(d)(ii) and 8.04(d)(iii) hereof."

Ex. 1, Article X, § 10.01(b).

basis of their capital investments in a commercial enterprise. *See* 8 CFR 204.6; 8 CFR 216.6. This program allows foreign nationals to invest a certain amount of money in a United States company, and if the company can create or maintain 10 full-time jobs, the foreign national will receive Lawful Permanent Resident ("LPR") status (commonly referred to as a "Green Card"). At the time of Ms. Yang's investment, the required investment was $1 million.

30.     There is a multi-step process for obtaining LPR status through the EB-5 program. First, the petitioner must submit a Form I-526, an "Immigrant Petition by Standalone Investor." The petitioner then must submit an application for immigrant visa either through adjustment of status with USCIS (via Form I-485) or through an application for an immigrant visa with the Department of State (via Form DS-230). Upon approval of the Form I-485 or admission an EB-5 immigrant visa, the petitioner is granted two years of conditional permanent resident status. At the end of the two-year period, the petitioner can file a Form I-829, a petition to remove the conditions on his or her LPR status ("Petition to Remove Conditions"). If the

petitioner has fulfilled the requirements of the EB-5 program, the conditions will be removed, and the petitioner will become an unconditional LPR.[4]

31.    Ms. Yang applied for conditional LPR status in connection with her capital contribution in the Company. The Operating Agreement reflects this. *See* Ex. 1, §§ 9.01-9.03.

32.    Pursuant to the Operating Agreement, the Company agreed "to use its reasonable efforts to cooperate with [Ms. Yang] to get [Ms. Yang's] Form I-526 (Immigrant Petition by Alien Entrepreneur) and Form I-829 (Petition by Entrepreneur to Remove Conditions), with respect to [her] investment in the Company, approved by the U.S. Citizenship and Immigration Services, to allow [her] to obtain permanent residency in the United States." *Id.* § 9.02.

33.    On February 3, 2022, Ms. Yang submitted her Form I-829 Petition to Remove Conditions as an LPR.

34.    Pursuant to the Operating Agreement, Ms. Yang is currently entitled to receive distributions of her Preferred Return Amount, which is at least $20,000 as of

---

[4] *See* U.S. Citizen and Immigration Services, EB-5 Immigrant Investor Pilot Program, https://www.uscis.gov/sites/default/files/document/presentations/EB-5%20Investor%20Pilot%20Program.pdf

the date of this filing. Ex. 1, § 5.13(b)(i). She has not received any distributions of her Preferred Return Amount.

35.     Pursuant to the applicable regulations, her Initial Capital Contribution must remain in the Company for at least two years after the filing of her Petition to Remove Conditions. 8 CFR 216.6. Pursuant to the Operating Agreement, Ms. Yang will become entitled to receive her Initial Capital Contribution when her Petition to Remove Conditions is approved. *Id.*, §§ 5.13(b), 5.13(d)(ii).

## C. Defendants' Improper Transfers.

36.     The Company has a bank account for each of the Marco's Pizza stores (the "Company Bank Accounts").

37.     Defendant Martines and/or Defendant One Lily Pad have complete control over the Company Bank Accounts. Ms. Yang does not have any control over, or access to, the Company Bank Accounts.

38.     Pursuant to the Operating Agreement, when the Company has "Excess Cash," that cash is to be distributed to Ms. Yang first. Excess cash should not be distributed to others until it is distributed to Ms. Yang. Ex. 1, § 5.13(b). If it is not distributed to Ms. Yang, it should remain in the Company Bank Accounts for the Company's legitimate business.

13

39.     Recently, Ms. Yang discovered that Defendants have been authorizing and making improper, unjust, undisclosed, unauthorized, and fraudulent transfers of funds from the Company Bank Accounts to Defendant One Lily Pad's separate bank account and the bank accounts of other entities that are wholly-owned and operated by Defendants (the "unauthorized transactions").

40.     Specifically, Defendant Martines is the sole owner and member of (a) Defendant One Lily Pad, LLC, (b) One Management Group FL LLC, and (c) MP Management Group FL LLC ("Defendants' Separate Entities"). One Lily Pad, LLC, is also the controlling Member of the Company. Defendants effectuated numerous unauthorized transactions with Defendants' Separate Entities.

41.     Pursuant to the MCL 450.4409, because Defendants had an interest in these transactions, one of the following was required:

> (a) The transaction was fair to the company at the time entered into.
>
> (b) The material facts of the transaction and the manager's or agent's interest were disclosed or known to the managers and the managers authorized, approved, or ratified the transaction.
>
> (c) The material facts of the transaction and the manager's or agent's interest were disclosed or known to the members entitled to vote and they authorized, approved, or ratified the transaction.

14

(2) Except as otherwise provided in the articles of organization or an operating agreement, a transaction is authorized, approved, or ratified for purposes of subsection (1)(b) if it receives the affirmative vote of a majority of the managers that have no interest in the transaction. The presence of, or a vote cast by, a manager with an interest in the transaction does not affect the validity of an action taken under subsection (1)(b).

(3) Except as otherwise provided in the articles of organization or an operating agreement, a transaction is authorized, approved, or ratified for purposes of subsection (1)(c) if it receives a majority of votes cast by the members entitled to vote that do not have an interest in the transaction.

42.     Defendant One Lily Pad—the majority Member—was an interested party in the unauthorized transfers to itself, One Lily Pad. A majority of Members are required to authorize such transfers. These transfers were not disclosed to Ms. Yang, the other Member. For that reason, we know that One Lily Pad (through Defendant Martines) authorized this improper, unjust, and fraudulent transfer of funds to itself in breach of the Operating Agreement, its fiduciary duties, and the MLLCA.

43.     Likewise, Defendant Martines was an interested party in all of the unauthorized transfers to Defendants' Separate Entities. By authorizing and making such transfers, he too breached the Operating Agreement, his fiduciary duties, and the MLLCA.

44.     Defendants were not entitled to participate in any vote to authorize, approve, or ratify these transactions under MCL 450.4409(1)(b) or (c). *See* MCL 450.4409(2), (3). Instead, a "vote of a majority of the managers that have no interest in the transaction" or a majority of "members entitled to vote that do not have an interest in the transaction" was required. *Id.* Such a vote did not occur.

45.     Despite these restrictions, between 2019 and 2023, Defendants authorized the transfer of and transferred a net amount equal to nearly all of Ms. Yang's investment from the Company Bank Accounts to the bank accounts of Defendants' Separate Entities. There was no legitimate business reason for these transfers.

46.     These transfers were not authorized by the Operating Agreement, were not done for any legitimate business reason, were not fair to the company, and were not disclosed to and authorized, approved, or ratified of by a majority of the non-interested Managers or Members of the Company.

47.     These funds should have stayed in the Company Bank Accounts, to be used for the Company's legitimate business. Then, to the extent there was Excess Cash, it should have been distributed first to Ms. Yang as Investor Member.

48.     There may be other improper and fraudulent transfers of which Plaintiff is not aware.

49.     Defendant Martines also recently implored Ms. Yang to forego the 2% interest to which she is entitled under the Operating Agreement. *See* Ex. 1, Article X, § 10.01(dd). He explained to her that the Company was in desperate need of cash, and that it would help the Company and the underlying businesses out if she did not take that interest. She did not receive that interest payment.

50.     If the Company was in desperate need of cash, it clearly was due to the improper, unjust, undisclosed, unauthorized, and fraudulent transfers described herein.

51.     Notably, the Company's desperate need for cash did not prevent Defendants from continuing to take their "management fee" from the Company in the form of guaranteed payments. *See* Ex. 1, § 5.15(b).

52.     As a result of Defendants' conduct, Ms. Yang has suffered, and is continuing to suffer, damages, including but not limited to: money damages, the loss of her voting rights and rights to participate in the management of the Company as a Manager and Member, lost profits, and attorney fees. Among other things, Defendants have and will continue to deprive Plaintiff of the economic benefits of her membership in the Company. Moreover, Defendants conduct has the potential to harm the underlying Marco's Pizza stores by depriving them of the funds they

need to operate. Harm to the Marco's Pizza stores also has the potential to negatively impact Ms. Yang's Petition to Remove Conditions.

## COUNT I - BREACH OF CONTRACT

53.    Plaintiff incorporates by reference her allegations in the foregoing paragraphs as though fully restated herein.

54.    The Operating Agreement is a binding contract between the Company, Ms. Yang, and Defendant One Lily Pad.

55.    As Manager and President of the Company, and sole Member and owner of Defendant One Lily Pad, Defendant Martines is also bound by the Operating Agreement.

56.    Defendants have materially breached their obligations under the Operating Agreement through the conduct described herein, including by making or authorizing improper, unjust, undisclosed, unauthorized, and fraudulent transfers of Company funds to the bank accounts of Defendants' Separate Entities.

57.    This constituted the receipt of a financial benefit to which Defendants were not entitled, was not done in good faith, was not conduct they reasonably believe to be in the best interests of the Company. Defendants also failed to follow the proper procedures for authorization of transactions in which they had a personal interest.

58.   In at least these ways, Defendants' conduct constituted a breach of the Operating Agreement.

59.   As a direct and proximate result of Defendants breaches of the Operating Agreement, Ms. Yang has suffered, and is continuing to suffer, damages, including but not limited to: money damages, lost profits, and attorney fees. Among other things, Defendants have and will continue to deprive Ms. Yang of the economic benefits of her membership in the Company and her other rights as a manager of and member in the Company, including voting rights.

60.   Moreover, Defendants' conduct has the potential to harm the Marco's Pizza stores by depriving them of the funds they need to operate.

61.   Harm to the Marco's Pizza stores also has the potential to negatively impact Ms. Yang's Petition to Remove Conditions.

62.   As a result of Defendants' breaches of the Operating Agreement, Ms. Yang has suffered irreparable injury, and there is imminent danger that Ms. Yang will continue to suffer irreparable injury for which there is no adequate remedy at law. These irreparable injuries include, but are not limited to, harm to Plaintiff's management and membership rights and interest, including voting rights; potential harm to Marco's Pizza stores including financial harm and loss of good will and subsequent harm to Ms. Yang's Petition to Remove Conditions.

63.    Pursuant to Section 4.01 of the Operating Agreement, Defendants are personally liable to Plaintiff because they received a financial benefit for which they were not entitled and because they breached Section 308 of the MLLCA.

64.    Monetary damages cannot be calculated with certainty because, for example, there is no way to adequately measure the harm to Ms. Yang's membership rights and interest, including voting rights, the harm to the success and goodwill of the subsidiaries and Marco's Pizza stores, and harm to Ms. Yang's Petition to Remove Conditions.

65.    Ms. Yang will suffer substantially more harm if an injunction is not issued than Defendants will suffer if an injunction is issued.

66.    Ms. Yang does not have an adequate remedy at law for Defendants' violations of the Operating Agreement.

67.    Ms. Yang is likely to prevail on the merits in this matter.

68.    The public interest favors enforcement of the parties' Operating Agreement.

69.    Ms. Yang is entitled to preliminary and permanent injunctive relief against further breaches by Defendants of the Operating Agreement.

## COUNT II - BREACH OF FIDUCIARY DUTY

70.     Plaintiff incorporates by reference her allegations in the foregoing paragraphs as though fully restated herein.

71.     MCL 450.4404(1) provides: "A manager shall discharge the duties of manager in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner the manager reasonably believes to be in the best interests of the limited liability company."

72.     MCL 450.4409 provides:

> (1) Except as otherwise provided in an operating agreement, a transaction in which a manager or agent of a limited liability company is determined to have an interest shall not, because of the interest, be enjoined, be set aside, or give rise to an award of damages or other sanctions, in a proceeding by a member or by or in the right of the company, if the manager or agent interested in the transaction establishes any of the following: (a) The transaction was fair to the company at the time entered into. (b) The material facts of the transaction and the manager's or agent's interest were disclosed or known to the managers and the managers authorized, approved, or ratified the transaction. (c) The material facts of the transaction and the manager's or agent's interest were disclosed or known to the members entitled to vote and they authorized, approved, or ratified the transaction.

> (2) Except as otherwise provided in the articles of organization or an operating agreement, a transaction is authorized, approved, or ratified for purposes of subsection (1)(b) if it receives the affirmative vote of a majority of the managers that have no interest in the

transaction. The presence of, or a vote cast by, a manager with an interest in the transaction does not affect the validity of an action taken under subsection (1)(b).

(3) Except as otherwise provided in the articles of organization or an operating agreement, a transaction is authorized, approved, or ratified for purposes of subsection (1)(c) if it receives a majority of votes cast by the members entitled to vote that do not have an interest in the transaction.

73.    At all relevant times herein, Ms. Yang was a minority Member of the Company.

74.    At all relevant times herein, Defendant One Lily Pad was the majority and controlling Member of the Company.

75.    At all relevant times herein, Defendant Martines held two of three management votes in the Company and thus had complete control over the Company.

76.    At all relevant times herein, Defendant Martines was the President of the Company.

77.    As controlling Member of the Company, Defendant One Lily Pad owed fiduciary duties to Ms. Yang.

78.    As controlling Manager and President of the Company, Defendant Martines owed fiduciary duties to Ms. Yang.

22

79.     Defendants owed Ms. Yang the duty to act in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner they reasonably believed to be in the best interests of the Company and its Members.

80.     Defendants owed Ms. Yang a fiduciary duty to not engage in self-dealing.

81.     Defendants owed Ms. Yang a fiduciary duty to not misappropriate company assets for personal gain at the expense of Ms. Yang.

82.     Defendants breached their fiduciary duties to Ms. Yang by engaging in self-dealing and causing the Company to make improper, unjust, undisclosed, unauthorized, and fraudulent transfers of Company funds to the bank accounts of Defendants' Separate Entities.

83.     Defendants had personal interests in these transactions.

84.     These transactions were not fair to the Company at the time entered into nor were they authorized, approved, or ratified by an affirmative vote of a majority of the Managers with no interest in the transaction.

85.     By virtue of their actions and misconduct described herein, Defendants acted in their own self-interest, which was and is in conflict with the interests of Ms. Yang and the Company.

86.     As a direct and proximate result of the Defendants' actions and misconduct described herein, Ms. Yang has suffered, and will continue to suffer, damages, including money damages in an amount to be proven at trial, lost profits, attorneys' fees, and irreparable injury, and there is imminent danger that Ms. Yang will continue to suffer irreparable injury for which there is no adequate remedy at law. These irreparable injuries include, but are not limited to, harm to Ms. Yang's membership rights and interest, including voting rights; potential harm to Marco's Pizza stores including financial harm and loss of good will, and subsequent harm to Ms. Yang's Petition to Remove Conditions. It will also continue to deprive Ms. Yang of the economic benefits of her membership in the Company and distributions she would be entitled to but-for Defendants' conduct.

87.     Monetary damages cannot be calculated with certainty because, for example, there is no way to adequately measure the loss of Ms. Yang's membership and management rights,  the harm to the success and goodwill of the Marco's Pizza stores, or harm to Ms. Yang's Petition to Remove Conditions.

88.     Ms. Yang will suffer substantially more harm if an injunction is not issued than Defendants will suffer if an injunction is issued.

89.     Ms. Yang does not have an adequate remedy at law for Defendants' violations of the Operating Agreement.

90.     Ms. Yang is likely to prevail on the merits in this matter.

91.     The public interest favors enforcement of the parties' Operating Agreement.

92.     Ms. Yang is entitled to preliminary and permanent injunctive relief against further breaches by Defendants of the Operating Agreement.

93.     Ms. Yang further requests that this Court award damages to Ms. Yang in an amount to be proven at trial for those monetary damages that can be calculated with reasonable certainty.

## COUNT III– MEMBERSHIP OPPRESSION IN VIOLATION OF MCL 450.4515

94.     Plaintiff incorporates by reference her allegations in the foregoing paragraphs as though fully restated herein.

95.     Since minority shareholders and members in closely held companies cannot readily sell and trade their shares on the public markets, they are particularly susceptible to abuse or "oppression" by those in control.

96.     In recognition of this fact, the Court of Appeals has noted that a shareholder in a closely-held corporation "is unable to escape an oppressive situation by dispensing with shares of ownership in the public arena." *Estes v IEEA Eng & Fabricating, Inc*, 250 Mich App 270, 280 (2002).

97.     To remedy this problem, the oppression statues were adopted by the Michigan Legislature to give a statutory cause of action to shareholders and members who are abused by controlling persons or factions.

98.     Specifically, "[a] member of a limited liability company may bring an action in the circuit court of the county in which the limited liability company's principal place of business or registered office is located to establish that acts of the managers or members in control of the limited liability company are illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member." MCL 450.4515(1).

99.     A single act, even an incomplete attempt to engage in oppression, or a series of acts, can give rise to a claim under Michigan law, thereby triggering the remedies under the statutes (which include, *inter alia*, an award of damages, the cancellation or alteration of a provision in the articles of organization or in an operating agreement, and the direction, alteration, or prohibition of an act of the limited liability company or its members or managers). *Id.*

100.    At all relevant times material hereto, Ms. Yang was a minority Member, holding a 25% membership interest in the Company.

101.    At all relevant times material hereto, Defendant One Lily Pad was the majority Member, holding a 75% membership interest in the Company.

102.   Moreover, pursuant to the Operating Agreement, Ms. Yang is entitled to appoint one of the three Managers of the Company and Defendant One Lily Pad is entitled to appoint two of the three Managers, giving it a majority of the Managers.

103.   At all relevant times, the Company was a manager-managed LLC, and Defendant Martines was the Manager in control of the Company and the Company's President.

104.   As the persons in control of the Company, Defendants were required to adhere to a special duty of care in the operations of the businesses and to act fairly in balancing their personal interests against those of the other Member who is not in control (Ms. Yang).

105.   Defendants' position also requires them to exercise a strict standard of fiduciary responsibility; a standard more akin to that involved in a partnership, which connotes "not mere honesty but the punctilio of honor most sensitive." *Band v Livonia Assocs*, 176 Mich App 95, 113, 439 NW2d 285, 294 (1989) (citing 59A Am Jur 2d, Partnership, § 420, p 453).

106.   The law requires those in control of a company to act with the utmost good faith in the control and management as to the minority Member.

107.   Defendants, as controlling Manager and Member of the Company, have violated these and other principles by, *inter alia*, acting illegally, by acting in a

willfully unfair and oppressive manner, and by acting in their own self-interest to the detriment of Ms. Yang and the Company by treating the Company's funds— which Plaintiff contributed and from which Plaintiff was entitled to distributions— as their own personal piggy bank.

108.   Specifically, Defendants have transferred funds from the Company Bank Accounts to the bank accounts of Defendants' Separate Entities, in which the Company does not hold any interests.

109.   As a result, Defendants have profited and added value to their other accounts and entities, while the Company's funds (the funds from which Ms. Yang would otherwise receive distributions) have been depleted.

110.   Additionally, Defendants discouraged Plaintiff from taking the 2% interest she is entitled to under the Operating Agreement because the Company was purportedly desperately in need of cash. Yet, Defendants did not hesitate to take a "management fee" from the Company. Ex. 1, Article X, § 10.01(dd); Ex. 1, § 5.15(b).

111.   This is another example of Defendants benefitting at the expense of Ms. Yang.

112.   Indeed, the Company would not have been in desperate need of cash were it not for Defendants' improper, unjust, undisclosed, unauthorized, and fraudulent transfers of Company funds.

113.   By engaging in this conduct, Defendants have used their control over the Company and its funds to favor themselves and their other entities' accounts at the exclusion of the minority Member of the Company—Ms. Yang. Such conduct is fraudulent, willfully unfair, or oppressive to the interests of Ms. Yang.

114.   As a result of Defendants' fraudulent, willfully unfair, and oppressive conduct in violation of MCL 450.4515, the Company and Ms. Yang have been damaged in an amount greater than $75,000 and to be proven at trial.

115.   As a Member of the Company, Ms. Yang is authorized to bring this claim under MCL 450.4515 and to seek those remedies as authorized by MCL 450.4515.

116.   Pursuant to MCL 450.4515(1)(b), Ms. Yang requests that this Court order the Operating Agreement be amended to (i) require notice to, and authorization from, Ms. Yang before Company funds can be transferred or spent; and (ii) give Ms. Yang access to the Company Bank Accounts and make her a signatory on those accounts.

117.   Pursuant to MCL 450.4515(1)(c), Ms. Yang further requests that this Court enter an order prohibiting Defendants from making any improper, unjust, undisclosed, unauthorized, or fraudulent transfers of Company funds and requiring Defendants to maintain the Company's Excess Cash in the Company Bank Accounts, and not make any transfers of funds or distribution of Company funds without disclosure to, and authorization by, Ms. Yang.

118.   Pursuant to MCL 450.4515(1)(e), Plaintiff further requests that this Court award damages to Plaintiff in an amount to be proven at trial.

## COUNT IV – COMMON LAW CONVERSION

119.   Plaintiff incorporates by reference its allegations in the foregoing paragraphs as though fully restated herein.

120.   Plaintiff has a membership interest in the Company and is entitled to certain distributions of the Company's Excess Cash, including the distribution of her Preferred Return Amount, which is at least $20,000 as of the date of this filing.

121.   She has not received any distributions of her Preferred Return Amount.

122.   A membership interest constitutes personal property. MCL 450.4504.

123.   Ms. Yang's unpaid distributions constitute her personal property.

124.   Through their conduct described herein, including the improper, unjust, undisclosed, and unauthorized transfers of Company funds to the bank accounts of

Defendants' Separate Entities, Defendants committed distinct acts of dominion which they wrongfully exerted over these funds, which should have been distributed to Ms. Yang.

125.   These actions were inconsistent with Plaintiff's rights, as it deprived Plaintiff of distributions to which she is entitled.

126.   Defendants' actions constitute common law conversion.

127.   Plaintiff is entitled to damages and attorneys' fees as a result of Defendants' wrongful conversion.

## COUNT V - STATUTORY CONVERSION

128.   Plaintiff incorporates by reference its allegations in the foregoing paragraphs as though fully restated herein.

129.   Plaintiff has a membership interest in the Company and is entitled to certain distributions of the Company's Excess Cash including the distribution of her Preferred Return Amount, which is at least $20,000 as of the date of this filing.

130.   A membership interest constitutes personal property. MCL 450.4504.

131.   Ms. Yang's unpaid distributions constitute her personal property.

132.   Through their conduct described herein, including the improper, unjust, undisclosed, unauthorized, and fraudulent transfers of Company funds to the bank accounts of Defendants' Separate Entities, Defendants committed distinct acts of

dominion which they wrongfully exerted over these funds, which should have been distributed to Ms. Yang.

133.   These actions were inconsistent with Plaintiff's rights, as it deprived Plaintiff of distributions to which she is entitled.

134.   Defendants knew Plaintiff was entitled to these funds, because they were in control of the Company and in charge of making distributions.

135.   Defendants wrongfully stole, embezzled, and/or converted these funds for their own use by moving the funds to the bank accounts of Defendants' Separate Entities.

136.   Defendants' actions constitute statutory conversion under MCL 600.2919a.

137.   Plaintiff is entitled to treble damages and attorneys' fees as a result of Defendants' wrongful conversion.

## <u>COUNT VI – ACCOUNTING</u>

138.   Plaintiff incorporates by reference her allegations in the foregoing paragraphs as though fully restated herein.

139.   Under the Michigan Limited Liability Company Act, MCL 450.4503(5), as well as section 2.04 of the Operating Agreement, members of an

LLC are entitled to access and review company books and records and to receive a formal account as to company affairs.

140. As a result of Defendants' fraudulent, willfully unfair, and oppressive acts and breaches as described herein, a full and just accounting is necessary to determine how the funds of the Company were used and transferred to the bank accounts of Defendants' Separate Entities.

141. Ms. Yang is entitled to an accounting of the affairs of the Company under MCL 450.4503(5).

## COUNT VII – APPOINTMENT OF RECEIVER

142. Plaintiff incorporates by reference its allegations in the foregoing paragraphs as though fully restated herein

143. The Defendants control the Company and operate the businesses.

144. Plaintiff does not have possession of the Defendants' records or access to their accounts or other property and are unable to operate the businesses without these items.

145. Defendants have made, and will likely continue to make, improper, unjust, undisclosed, unauthorized, and fraudulent transfers of Company funds to the bank accounts of Defendants' Separate Entities.

146.   The appointment of a Receiver is necessary to protect and preserve the Company, its assets, and Plaintiff's interests therein.

147.   The Company and its assets will be severely and irreparably injured and devalued if not secured and placed in the care of a qualified Receiver.

148.   Defendants have already proven that they are willing to defraud Plaintiff and steal Company funds. Without a Receiver, it is all but certain that Defendants will continue their improper and oppressive scheme by continuing to steal these funds.

149.   The Receiver must be authorized to cease improper comingling of funds, cease improper, unjust, undisclosed, and unauthorized payments to the Defendants, and otherwise supervise and manage the affairs (including distributions and payments) of the Company and Defendants such that Defendants are no longer able to use the Company as their personal piggy bank.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant:

     a.   Compensatory damages in an amount in excess of $75,000, exclusive of interest and costs;

b.  Disgorgement of all amounts Defendants have received as a result of breaches of the Operating Agreement and breaches of their fiduciary duties;

c.  Preliminary and permanent injunctive relief barring Defendants from further violation of the Operating Agreement and of their fiduciary duties, including, but not limited to, an order (i) barring Defendants or their affiliates from making improper, unjust, undisclosed, unauthorized, or fraudulent transfers of Company funds; and (ii) amending the Operating Agreement to require notice to, and authorization from, Plaintiff before Company funds can be transferred or spent, giving Plaintiff access to the Company Bank Accounts, and adding Plaintiff as a signatory on the Company Bank Accounts.

d.  An accounting;

e.  Appointment of a receiver;

f.  Interest, costs, and attorney fees; and

g.  Any other relief to which Plaintiff may be entitled.

Respectfully submitted,

BODMAN PLC
By: /s/ Michelle Thurber Czapski (P47267)
Michelle Thurber Czapski (47267)
Nathan D. Dupes (P75454)
201 W. Big Beaver Road, Suite 500
Troy, Michigan 48084
(248) 743-6000
mczapski@bodmanlaw.com
ndupes@bodmanlaw.com
*Attorneys for Plaintiff*

December 21, 2023

# VERIFICATION

I, Chuanhua Yang, verify this Complaint based upon personal knowledge, the financial statements of the OLPMN 1, LLC, or matters made known to me. For those matters stated upon information and belief, I believe them to be true after reasonable inquiry. I declare under penalties of perjury that the foregoing is true and correct.


By: _____

Chuanhua Yang

Member, OLPMN 1, LLC

4883-5421-4293_121